O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WBS, INC., | Case No. CV16-03495 DDP(JC) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Stephen Pearcy; Artists Worldwide; top Fuel National, Strong Marketing Group, d/b/a Watercraz Marketing Group; Kjirsten Strong, *et al*. | [Dkt. 89, 90, 100, 109 and 114] |
| Defendants. | |

Presently before the court is Defendant Stephen Pearcy's Motion for Summary Judgment. Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following Order.

**I. Background**

In 1987, Defendant Stephen Pearcy ("Pearcy") formed the band now commonly known as "RATT." (Decl. Stephen Pearcy ¶3.) Pearcy initially named the band "MICKEY RATT," and started out by playing in local bars and clubs in southern California and Nevada. (Id. at ¶5.)

On January 1, 1980, the band relocated to Los Angeles. (Decl. Turner ¶¶4-5.) At that time, the band consisted of Pearcy, Chris Hager, John Turner, and Tim Garcia. (Id.) All the band members, with the exception of Tim Garcia, relocated to Los Angeles. (Id.) According to Turner, upon relocating to Los Angeles, Pearcy decided the band would drop the word "Mickey" from its name and would be renamed "RATT." (Id. at ¶6.) As part of the rebranding process, Pearcy designed a new logo for the band to be featured on singles. Pearcy personally paid for "several hundred pressings of each such recording." (Id. at ¶10; Decl. Pearcy ¶11.) By 1981, Pearcy had designed, adopted, and commercially used the RATT logo. (Decl. Turner ¶17; Decl. Pearcy ¶11.)

During 1981 and 1982, several members joined and departed the band. (Decl. Pearcy ¶14,16.) By 1983, none of the musicians performing with RATT prior to 1982 remained in the band, with the exception of Pearcy himself. (Decl. Turner ¶21.) By 1983, RATT was comprised of Pearcy, Robbinson Lantz Crosby ("Crosby"), Warren DeMartini ("DeMartini"), Juan Carlos Croucier ("Croucier"), and Robbert Blotzer ("Blotzer"). (Decl. Pearcy ¶15.) In early 1984, RATT become nationally known when they released the album "*Out of the Cellar.*" (Decl. Majors ¶6.) The album was certified as triple platinum by the Recording Industry Association of America and reached number seven on the Billboard 200. (Id.) The RATT logo was featured on the front cover of the multi-platinum release. (Id. at ¶17.)

On June 11, 1985, all five members of the band established the RATT General Partnership ("the Partnership") and memorialized the terms of the partnership in a Partnership Agreement ("the Partnership

2

Agreement".) (Decl. Percy ¶19; Ex. B-10.) Around 1991 or 1992, Crosby was expelled from the Partnership, leaving Pearcy, Croucier, Demartini, and Blotzer as remaining partners. (Decl. Pearcy ¶20.)

Under Section 7.1 of the Partnership Agreement, no partner had the right to "sell, transfer, assign, mortgage, hypothecate, encumber or otherwise dispose of all or part of his interest in the Partnership without prior unanimous written consent of all of the Partners." (Decl. Pearcy, Ex. B-10 at 7.1.) The Partnership Agreement provided that, in the event the partnership dissolved, "each of the Partners shall be entitled to receive his Proportionate Share of the revenues received on account of the Partnership from all other sources." (Id. at 10.6.) Section 11.1 of the Partnership Agreement further provided that "[i]n the event of death, permanent disability, [v]oluntary or [i]nvoluntary [w]ithdrawal of a Partner. . ., the Partnership shall not dissolve or terminate but shall continue without interruption and without any break in continuity." (Id. at 11.1.)

Around May 1997, Plaintiff WBS, Inc. ("WBS") was formed by three of the four remaining partners: DeMartini, Blotzer, and Pearcy. Croucier did not participate in the formation of WBS. (Decl. Pearcy ¶¶17-21.) According to Pearcy, WBS was formed to handle aspects of the then newly-revived RATT band's touring business, separate and apart from the Partnership. (Id. at ¶¶21-25.) According to Pearcy, WBS was required to tender 1,000 shares of stock in the WBS Corporation as consideration for his participation in WBS. (Id. at ¶23.) Pearcy never received the shares, despite numerous requests.

3

(Id.) Instead, Pearcy states, Demartini and Blotzer expelled him from WBS. (Id.)

Around February 2001, Pearcy brought an action against WBS, Blotzer, DeMartini and others in Los Angeles County Superior Court ("Pearcy State Court Case").[1] Pearcy alleged he was wrongfully removed as a corporate officer of WBS after being defrauded of his stock interest in the company. (Id. at ¶24.) In the Pearcy State Court Case, the answering defendants filed a counterclaim, which Pearcy "materially lost." (Motion at 15.) Pearcy has appealed the outcome, alleging ineffective assistance of legal counsel. (Id.) The state trial court's judgment did not make any determination regarding the composition of the Partnership or the purported trademark assignment. (RJN, Ex. A-8 at 8.)

In 2015, WBS sued Croucier after he began using several RATT trademarks (the "Croucier action").[2] (Decl. Pearcy ¶25.) WBS claimed that four RATT-related trademarks, such as the band name, logo and associated trademarks were registered with the United States Trademark and Patent Office ("USTPO") in 1985 and 1986 by the RATT partnership.[3] WBS further alleged that on June 2, 1997, "the [trademarks] were assigned through a sale of a partnership along with all assets owned thereby to [WBS]," and that WBS recorded the assignment with the USTPO in 2015. (RJN, Ex. A-3 at ¶4.) WBS maintained that Croucier had been expelled from the Partnership prior

---

[2] Pearcy v. WBS, Inc., Case No. BC245356.
[3] The trademarks at issue were registration numbers 1368245, 1368246, 1383344 and 1383345. The same trademarks are at issue in this case.

4

to June 1997, and that his authorization to transfer the marks to WBS was therefore not necessary.[4] (RJN, EX. A-4 at 10.)

In the Croucier lawsuit, this Court concluded, on cross motions for summary judgment, that there was no evidence that Croucier had been formally expelled from the Partnership prior to the purported assignment of the marks to WBS. Because Croucier never consented to the assignment, as required by the Partnership Agreement, the assignment was invalid. (Id.) Thus, this Court determined, WBS could not show that it had an ownership interest in the marks. (RJN, Ex. A-4 at 12:10-14.)[5]

This case, brought by WBS against Pearcy, is a close analogue of the Croucier action. WBS again alleges that it is the owner of the RATT trademarks, which it obtained via an assignment from the Partnership. WBS alleges that Pearcy is infringing upon those marks, and brings claims for trademark infringement and dilution, unfair competition, false designation of origin, and intentional and negligent interference of economic relations. (Id. at 6-19.)

Pearcy now moves for summary judgment on all claims. WBS has not substantively opposed Pearcy's motion.[6]

---

[4] Also in 2015, DeMartini initiated a shareholder derivative suit ("Derivative Suit") in state court. (RJN, Ex. A-5.) DeMartini sued as an individual/officer and as a shareholder of WBS and named WBS and Blotzer, as an individual/officer, as Defendants. (Id.) DeMartini alleged Blotzer improperly usurped his corporate authority over WBS. (Id.)

[5] WBS subsequently filed a motion for reconsideration, asserting that Croucier should be estopped from challenging the validity of the assignment because the Pearcy State Court Case judgment. This Court denied WBS' motion.

[6] Although WBS did file an opposition to Pearcy's motion, WBS essentially duplicates the argument in its own Motion to Strike that this court should strike the motion for failure to meet and
(continued...)

5

**II. Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could

---

[6](...continued)
confer prior to filing. That motion is denied. Pearcy bears the burden of demonstrating the absence of any genuine issue material fact. See Cristobal v. Siegel, 26 F.3d 1488, 1494-95 (9th Cir. 1994).

return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir.1996). Counsel have an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

Pearcy has adequately demonstrated the absence of any genuine issues of material fact. Plaintiff cannot prevail on its trademark infringement-based causes of action without proving that it has an ownership interest in the RATT trademarks. See Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1202-3 (9th Cir. 2012). An invalid assignment of a trademark conveys no rights to that mark. See Mr. Donut of America v. Mr. Donut, Inc., 418 F.2d 838, 842 (9th Cir. 1969).

Plaintiff alleges that it obtained an ownership interest in the trademarks in 1997 when the RATT Partnership assigned the marks to WBS. Pearcy has presented uncontroverted evidence, however, that the

7

members of the RATT Partnership did not unanimously consent, either in writing or otherwise, to the assignment of the RATT marks to WBS.[7] Thus, any purported assignment of the marks to WBS was invalid, and conveyed no rights. Because no reasonable trier of fact could conclude that WBS had an ownership interest in the RATT marks, Pearcy's motion for summary judgment must be granted.[8] [9]

**IV. Conclusion**

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED.

//

//

//

//

//

---

[7] According to Pearcy, he, Croucier, and DeMartini expelled Blotzer from the Partnership in November, 2016. (Decl. Pearcy ¶ 28.) Pearcy asserts the Partnership authorized him and Defendant Artists Worldwide, Inc. to use the marks. (Id. at ¶29:4-9.)

[8] As noted above, Plaintiff has not filed a substantive opposition to Pearcy's motion, which argued not only that the assignment of the marks to WBS was invalid, but also that any argument to the contrary would be barred by the doctrine of collateral estoppel and this Court's judgment in the Croucier case. See Hydranautics v. FilmTec Corp., 204 F.3d 880, 885 (9th Cir. 2000) (explaining that collateral estoppel may apply when "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.")

[9] The court need not address Pearcy's contention that he has obtained the Partnership's authorization to use the marks, nor does the court take any position on any question of ownership between Pearcy and the Partnership or any dispute between the shareholders of WBS.

8

Based on the Court's ruling the following motion and requests are resolved and deemed moot. Plaintiff's Motion for Leave to Amend Complaint [100], Joint Request for Ruling on Defendants Motion for Summary Judgment [109], and Joint Request for Ruling Plaintiff's Motion to Strike and Defendants' Motion for Summary Judgment [114].

DATED: March 6, 2018

_____
Hon. Dean D. Pregerson